```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF SOUTH DAKOTA
 2                        SOUTHERN DIVISION

 3    * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                   )
 4    UNITED STATES OF AMERICA,    )   4:19-CR-40097
                                   )
 5                 Plaintiff,      )   Sioux Falls, South Dakota
                                   )   Courtroom II
 6       -vs-                      )
                                   )   February 14, 2022
 7    NATHAN PEACHEY AND           )   8:30 a.m.
      JOHN RICK WINER,             )
 8                                 )
                   Defendants.     )
 9    * * * * * * * * * * * * * * * * * * * * * * * * * * *

10
                         PUBLIC TRANSCRIPT OF
11                        SENTENCING HEARING
                          OF NATHAN PEACHEY
12
                       BEFORE THE HONORABLE
13                       KAREN E. SCHREIER
                    UNITED STATES DISTRICT JUDGE
14
      (PURSUANT TO STANDING ORDER 16-04, PORTIONS OF ALL CHANGE OF
15         PLEA AND SENTENCING TRANSCRIPTS ARE RESTRICTED)

16    * * * * * * * * * * * * * * * * * * * * * * * * * * *

17    APPEARANCES:

18    Counsel for Plaintiff:

19                    Jeremy R. Jehangiri and
                      Ann Hoffman
20                    U.S. Attorney's Office
                      PO Box 2638
21                    Sioux Falls, SD 57101-4410

22    Defendant Nathan Peachey appeared pro se

23

24

25
```

1                    (Ex parte proceedings preceding this matter

2          are contained in separate transcript)

3               THE COURT:  And the courtroom is now open to the

4     public.

5                    (Courtroom opened)

6               THE COURT:  This is the time scheduled for a

7     sentencing in the matter entitled United States of America

8     v. Nathan Peachey.

9               Would the government please note its appearance for

10    the record.

11              MR. JEHANGIRI:  Good morning, Your Honor.  Jeremy

12    Jehangiri on behalf of the United States, along with my

13    colleague, Ann Hoffman.

14              THE COURT:  And Mr. Peachey is here representing

15    himself.  He no longer wants to have an attorney represent

16    him.

17              Mr. Peachey, is that correct?

18              DEFENDANT PEACHEY:  That is correct, Your Honor.

19              THE COURT:  And, Mr. Peachey, have you had a chance

20    to review the Presentence Report?

21              DEFENDANT PEACHEY:  I've reviewed it; and I have

22    accepted it, signed, and dated the entire report.  I have

23    accepted it for the record.  Thank you.

24              THE COURT:  And the government has had an

25    opportunity to review the Presentence Report?

```
 1              MR. JEHANGIRI:  Yes, Your Honor.
 2              THE COURT:  The government had five objections to
 3      the report.  The report was amended.
 4              Do you have any remaining objections that the Court
 5      needs to rule on?
 6              MR. JEHANGIRI:  No, Your Honor.
 7              THE COURT:  There were 18 objections filed by the
 8      defense to the report.
 9              Mr. Peachey, did you want me to rule on each of
10      those objections?
11              DEFENDANT PEACHEY:  Your Honor, I have accepted the
12      report.
13              THE COURT:  So you have no objections to the
14      report?
15              DEFENDANT PEACHEY:  I'm here on special appearance,
16      not general appearance.  I have accepted the report, and the
17      matter is closed.
18              THE COURT:  So you don't want me to rule on any of
19      the objections?  Is that correct?
20              DEFENDANT PEACHEY:  Like I said, I'm here on
21      special appearance, not general appearance.  I have accepted
22      the report, signed, and dated the report.
23              THE COURT:  So I'm taking from that that the
24      defendant no longer has any objections to the report, and
25      the report will remain as written.
```

```
 1              Mr. Peachey, if there's anything that you want me
 2    to rule on, you'll need to tell me right now --
 3              DEFENDANT PEACHEY:  Your Honor --
 4              THE COURT:  -- with regard to the report.
 5              DEFENDANT PEACHEY:  Your Honor, I have accepted the
 6    report.  And the government also handed me the Notice of
 7    Forfeiture.  I have accepted all of that, for the record.
 8    Can I hand them a copy of it?
 9              THE COURT:  Sure.
10              DEFENDANT PEACHEY:  May the record reflect that
11    I've accepted the Notice of Forfeiture.
12              THE COURT:  You were given a copy of the Notice of
13    Forfeiture.
14              DEFENDANT PEACHEY:  And I have accepted it, yes.
15    Will the record please reflect that?
16              THE COURT:  The record will reflect that you have
17    accepted the Notice of Forfeiture.
18              I did receive a number of letters, both letters
19    written on behalf of the victims and letters of support for
20    the defendant.  And I've reviewed all of the letters.  On
21    behalf of Mr. Peachey, letters were submitted by:
22    Mrs. Ammon Sarah Peachey -- there were two letters from
23    her -- Thomas Wengerd, Abram Peachey, Eldon Peachey, Iddo
24    Peachey, Gerald Kurtz Wenger, Linda Bender, Leroy Peachey,
25    Naomi Kanagy, Albert Peachey, Jeff and Gayle Anderson, Crist
```

1  Peachey, Mary Peachey, Daniel Peachey, Kenny Miller, and

2  Amos Peachey.  And then also the defendant had an allocution

3  letter that I reviewed.

4        Victim impact statements were submitted by James

5  Glover, Mark Hall, Robert and Marsha Moller, Jon Kenyon

6  Baird, Sandra Glauser -- and the letter from Jon Kenyon was

7  on behalf of Sally Jane Baird -- Alexander Knox, Dominic

8  Biava, Dennis Brown, Shelley Hyde, Lyle Knox, and Paul

9  Brown.

10       Are there any other letters that I should have

11  reviewed that I haven't identified?

12       MR. JEHANGIRI:  Not from the United States, Your

13  Honor.

14       THE COURT:  Mr. Peachey, did you submit any other

15  letters that I haven't reviewed?

16       DEFENDANT PEACHEY:  I haven't heard you say

17  anything.  There again, I'm here by special appearance just

18  to settle the matter so...

19       THE COURT:  So I just read the list of letters that

20  were submitted on your behalf, and I'm wondering if there

21  are any other letters that I missed.

22       DEFENDANT PEACHEY:  I wouldn't be able to tell that

23  because I didn't see the letters.

24       THE COURT:  Okay.

25       Under the Presentence Report the total offense

1  level was determined to be a 41.  The defendant is in

2  criminal history category I.  The advisory guideline range

3  is 324 to 405 months in custody.  Supervised release is one

4  to three years on each count.  The defendant would not be

5  eligible for probation.  The fine range is $50,000 to

6  $500,000.  Restitution has been requested in the amount of

7  $11,835,573.  And there's a special assessment on each count

8  of $100, for a total of $1,200.

9          Do you both agree?

10          MR. JEHANGIRI:  Yes, Your Honor.

11          DEFENDANT PEACHEY:  I accept the sentencing report.

12  I have a copy of it here.  I've accepted, I've signed it,

13  and I've dated it.

14          THE COURT:  Okay.

15          So first I wanted to talk about the restitution.

16  Restitution has been requested in the following amounts:

17  Paul Brown, $1,500,000; Dennis Brown, $2,925,000; Alexander

18  Knox, $1,300,000; Leigh Fairbank, $1,100,000; Jon Baird,

19  $480,000; Catherine Glauser, $500,000; Dominic Biava,

20  $500,000; Shelley Hyde, $300,000; Sandra Glauser, $300,000;

21  William Tennison, $550,000; Marvin Marttila, $532,414; Aaron

22  Beiler, $900,000; Robert and Marsha Moller, $794,159; Jim

23  and Jane Odle, $50,000; Gordon Rudebusch, $10,000; Larry

24  Rudebusch, $15,000; Randy Hudson, $10,000; Ria Woodruff,

25  $10,000; Gerald Dukes, $20,000; Irma Bittner, $9,000;

1   Marilyn Rudebusch, $10,000; and Jeff and Gayle Anderson,

2   $20,000, for a total of $11,835,573.

3           Mr. Peachey, any objection?

4           DEFENDANT PEACHEY:  I'm here by special appearance,

5   Your Honor, not general appearance.  I have accepted the

6   presenting report, and I've signed and dated everything.

7   Thank you.

8           THE COURT:  Mr. Jehangiri, any objection from the

9   government?

10          MR. JEHANGIRI:  No.  That sounds correct, Your

11  Honor.  Thank you.

12          THE COURT:  So I find that those are the victims

13  and the amounts of restitution that they are entitled to

14  receive.

15          Mr. Peachey, did you want to say anything regarding

16  sentencing?

17          DEFENDANT PEACHEY:  The copy that was given to me

18  by John Hinrichs, this is the final copy of it?  Presentence

19  Investigation Report?

20          THE COURT:  I don't know what you have in your

21  hand.

22          DEFENDANT PEACHEY:  He gave that to me in a book.

23  It's the Docket Number 419CR497.  And it is --

24          THE COURT:  Does it show Docket 272 on the top?

25          MR. JEHANGIRI:  Right here (indicating).

```
 1            DEFENDANT PEACHEY:  That's the one that we're

 2   talking about?  Yeah.  Okay.

 3            I had a couple of other questions regarding that.

 4   The Indictments -- I have a copy of the Indictments, two of

 5   them.  May I approach the prosecution?

 6            THE COURT:  You may.

 7            DEFENDANT PEACHEY:  Is this a copy of the

 8   Indictment, the Redacted Superseding Indictment, and then

 9   Second Superseding Indictment?  The 13 pages.  The first

10   one -- the first one is 11 pages.  Is that correct?  It was

11   signed by Dennis Holmes.

12            MR. JEHANGIRI:  Okay.

13            DEFENDANT PEACHEY:  Is this a copy of it?

14            MR. JEHANGIRI:  I don't know.  It looks like it is.

15            DEFENDANT PEACHEY:  Yes.  Thank you.  Appreciate

16   it.  Here's a copy of the Second Superseding.

17            MR. JEHANGIRI:  It looks like what was filed.  It

18   doesn't have a file stamp on the top.

19            DEFENDANT PEACHEY:  It doesn't have a file stamp on

20   it, but that's what was presented to me.

21            MR. JEHANGIRI:  That was under seal so that

22   explains why.

23            DEFENDANT PEACHEY:  So, Your Honor --

24            THE COURT:  Yes.

25            DEFENDANT PEACHEY:  The prosecution just confirmed
```

1  that this is the two copies of the Indictment.  It was a

2  Redacted Indictment, and then sometime later it was the

3  Second Superseding Indictment that was given to me as

4  presented to my attorney.  And there is no date on the

5  Indictment.  It could be 100 years old.  It could be 50

6  years old.  But I've accepted that, both of those

7  Indictments.  They're dated today.  There's no date on the

8  Indictments when they were issued, so I've accepted them as

9  February 14, 2022.  I've accepted all of them, front and

10  back signed and dated, and accepted them for the record,

11  please.  May I present one to the clerk of court for the

12  record?

13         THE COURT:  I just want to check one thing.  So the

14  actual documents, the copy that's filed with the clerk the

15  reports, would have a date on the top of each of those

16  documents.

17         DEFENDANT PEACHEY:  The presentment that was given

18  to me didn't have a date on, and it wasn't signed -- the

19  Attorney General signed it, but he didn't put a date on it.

20  And so I've accepted that as February 14, 2022, front and

21  back.  I've accepted both Indictments for the record.  The

22  matter can be closed.

23         I have nothing further.

24         THE COURT:  Did you want to say anything about what

25  your sentencing -- we're here for a sentencing hearing.

1        DEFENDANT PEACHEY:  I'm here by special appearance,

2    not general appearance.  I'm not here to testify or witness

3    to anything.  I've accepted the sentencing report.

4        THE COURT:  A defendant always has the opportunity

5    to speak before I decide what the sentence is.  You filed a

6    long allocution letter.  I read all of that.  I just wanted

7    to give you the opportunity if you wanted to say anything

8    else that this would be the time.

9        DEFENDANT PEACHEY:  Your Honor, like I said before,

10   I'm here by special appearance, not general appearance.  I

11   have accepted the Indictments.  I've signed and accepted

12   them.  There's no controversy between me and the U.S.

13   government anymore.  The matter is closed.  I have accepted

14   the sentencing presentment that was given to me.  I've

15   accepted that.  I've signed and dated it.  There's no

16   controversy.  I'm not here to argue law, fact, or

17   jurisdiction.  That's not what I'm here for.  I've accepted

18   everything.  Thank you.

19       THE COURT:  Okay.

20       Did anyone want to say anything on behalf of

21   Mr. Peachey?

22       MR. RUDY PEACHEY:  I would, Your Honor.

23       THE COURT:  Okay.  If you could come up and use the

24   microphone on the podium over here, then I can hear you a

25   little bit better.

```
1              MR. RUDY PEACHEY:  Leave my mask on?

2              THE COURT:  Yeah.  And what is your name?

3              MR. RUDY PEACHEY:  My name is Rudy Peachey.  I'm

4    Nathan Peachey's oldest son.  I don't really have a lot to

5    say.  We didn't know a lot about what was going on.  We were

6    here for part of the trial.  But I just want to say that we

7    are a family.  We've been together my whole life, other than

8    when we were apart traveling, whatnot.

9              We understand what has happened so far, and we

10   respect that.  We would just, on behalf of the family -- we

11   understand what needs to be done, but we would like to say

12   that, if it's possible -- you know, there's only two

13   children at home anymore with Mom.  And for Dad to be gone

14   for a very long time is going to impact us in more ways that

15   I can mention here.  But we -- like I said, we want to

16   respect what needs to be done, but we would also like to ask

17   that that will be taken into consideration.

18             I don't have any wonderful examples or things to

19   say on that, but just that we are a family.  And to have Dad

20   at home is important for us as a family.  We have many

21   friends and family there at home, and we love our father.

22   And that's pretty much all I have.  Thank you.

23             THE COURT:  Thank you, Rudy.

24             Did anyone else want to say anything?

25             MR. NIKKEL:  I would, Your Honor.
```

```
 1              THE COURT:  Okay.
 2              MR. NIKKEL:  Good morning, Your Honor.  I'm Trevor
 3  Nikkel.  I'm married to one of Nathan's daughters.  And I
 4  just would echo what has just been said.  We do understand
 5  the law and that it appears it has been broken and that that
 6  needs to be taken into consideration as well.  But that you
 7  would just consider that we do need Dad at home as a family
 8  man, and especially with children still at home and taking
 9  care of Mom and everything.  We just ask that you would
10  consider that.
11              THE COURT:  Thank you.
12              Did anyone else want to say anything?
13              MR. MILLER:  I would, Your Honor.
14              THE COURT:  Okay.
15              MR. MILLER:  I'm Kenny Miller, a friend of
16  Nathan's.  I've known him for over 15 years.  And just -- I
17  value him as a friend and a great example of a family man.
18  And I just ask you to consider that.  Thank you.
19              THE COURT:  Thank you.
20              Anyone else?
21              Mr. Jehangiri.
22              MR. JEHANGIRI:  May I approach?
23              Your Honor, this is -- this sentencing involves a
24  defendant that has engaged in what I would term "learned
25  behavior."  It's ongoing today in court.  I think -- there's
```

1   no doubt he's a family man.  There's no dispute about the

2   family he has at home, his children.  The youngest is 16.

3   And I think they are under a spell, like some of the victims

4   are, continued under this ongoing scheme.

5        The victims in this case were impacted

6   significantly.  There are retirements gone, lives altered

7   forever, all because they bought into what was supposed to

8   be righteous and good, but it was all a sham.  And I think

9   it's still happening right now.  This is learned behavior,

10  and he continues to engage in it.

11       This goes to 3553 factor (a)(1).  I think it weighs

12  against him for his history and characteristics, as does

13  what I submitted in our response to the Motion for Downward

14  Variance.  I believe that -- and the evidence shows -- that

15  Mr. Peachey has been engaged in some sort of fraud scheme

16  for probably over a decade.  I can't put my finger on when,

17  but it's been years in the making.  And he was engaging in

18  it with his co-defendant, Mr. Winer.  And when that started

19  to unravel, it just rolled into something new.  And they

20  were able to get these people, these victims, who believed

21  in Christian values, to invest in something that was

22  nonexistent.  There's nothing left.  So while I appreciate

23  the defendant accepting the restitution amount and whatever

24  terms he's using, the restitution is not going to be paid

25  meaningfully.  So, thankfully, we were able to secure

1    assets, and we're making efforts, daily, to try to get those

2    back to the victims so that their lives can maybe take on

3    some normalcy or the plan that they had set out before this

4    all happened to them.

5           Your Honor, as to 3553(a)(2), the need for the

6    sentence imposed, I think some very important things need to

7    be pointed out.  One is the defendant's allocution

8    statement.  It's absolutely offensive.  I've never read

9    anything like it.  But what it does is it shows his utter

10   disrespect for the law.  And it shows that this Court needs

11   to impose a serious sentence to provide just punishment for

12   the offense and that -- to protect the community from

13   further crimes that this defendant would engage in.  It's

14   been an ongoing fraud scheme, and he's finally caught.

15          The allocution attacked everyone and blamed

16   everyone except himself.  He's -- it was a shining,

17   disturbing example of narcissism.  That is not righteous or

18   Christian-like or whatever you may believe in in any sense

19   of the word.

20          Your Honor, the guideline range calls for a range

21   that's above the statutory max of the offenses of

22   conviction.  The United States recommends a sentence in the

23   guideline range.  And in order to do so, the Court would

24   need to run consecutive one of those counts.  And I'm asking

25   the Court to do so.  I think the substantive counts of money

1    laundering -- this money-laundering case was, hands down,

2    the most complicated, complex, sophisticated

3    money-laundering case I've ever seen.  There is no heartland

4    for this case.  This is in another stratosphere.  What he

5    was doing, the manner that he did it in, moving the money

6    and hiding it under these shell names, these alter egos --

7    I've never seen anything like it.  The tax returns

8    submitted, all false names.  Even the incorporation

9    documents in Washington state, they have a PO box at a UPS

10   Store.  Nothing exists.  The money-laundering substantive

11   counts can serve as an -- has been a basis to follow what

12   the guidelines say to impose a guideline-range sentence.

13          I also believe, Your Honor, that the obstruction of

14   justice conviction -- I know he gets an enhancement already

15   for that.  But I think his letter to the Court is

16   borderline, if not over the line, of obstruction of justice

17   at the sentencing hearing.  If you look at the factors that

18   are set forth in the commentary, Application Note 4,

19   Subsections A through I apply in this case.  He influenced

20   witnesses by and through others.  He submitted false

21   documents to the Court.  He tried to influence witnesses at

22   the grand jury, and he did.  He had an impact.  The letter

23   he sent -- the letters he sent to the multiple grand jury

24   witnesses that we subpoenaed to testify were affected.

25   Their testimony -- it was the most painful day I've ever had

1    at grand jury.  There was no one there to cross.  The Court

2    knows this, but I'll tell you, that what he submitted to

3    those grand jurors before that session completely altered

4    what they did in front of the grand jury under oath.

5            We have on tape him ordering and Defendant Winer

6    shredding documents.

7            Provision E relates to more specifically to

8    Mr. Winer so -- but I believe that this manifesto is false.

9    His story again changed in the submission to the Court in

10   his allocution statement.  He lied on numerous occasions to

11   the agents.  There are, I believe, false statements in the

12   PSR concerning the tax documents and the income that was

13   coming into his house.

14           And then finally, I, is actually conduct that would

15   merit obstruction of justice, for which he was convicted.

16           So for those reasons, Your Honor, I believe that

17   this Court can run consecutive the obstruction of justice

18   count and/or the substantive money-laundering counts to that

19   of the conspiracy counts to arrive at a guideline range

20   sentence because of the conduct -- the long-running conduct

21   associated with this case.

22           This defendant was the hub of this fraud scheme.

23   It did not go anywhere without him.  Rosier may have been

24   the guy sitting at the castle in Norway, but it was because

25   of this defendant's conduct in getting and spending this

1  money.  Rosier also engaged in learned behavior that

2  mirrored that of the former RuSA leader, Turner.  But he

3  didn't do much.  He just bossed people around and collected.

4  He was kind of a bumbling idiot.  The wheels turned with

5  this defendant.  And then he paid himself when he wired 1.4

6  or 5 million back to his Pennsylvania account.  So that goes

7  to the 3553 factors as well.

8          And I don't cite the factor of deterrence often.  I

9  feel like deterrence is a hard factor to meet in most

10  criminal cases involving violent crime, drug crimes, things

11  of that nature.  I believe that deterrence is a real thing

12  for the public and for defendants and those who engage in

13  this conduct when the Court imposes a serious sentence in

14  white-collar cases.  I feel that this factor under (2)(B) is

15  highly relevant in white-collar cases.  And I cite that for

16  the Court's consideration in imposing sentence.

17          The intent involved in these crimes is nothing like

18  I've seen.  The phone calls, the nefarious underlying deceit

19  just to rip all these people off is abhorrent.

20          Your Honor, I'd ask the Court to impose a guideline

21  range sentence for those reasons.  I'd ask the Court to

22  impose a term of supervised release of three years.  The

23  Court has already outlined the amount of restitution.  I'd

24  ask that that be imposed for the victims named earlier in

25  the proceeding.  I'd ask the Court to find in the judgment

1    that Christian Charity Foundation and Jericho Outreach were

2    alter egos of the defendant and to impose the special

3    verdict, as returned by the jury, regarding that property,

4    those pieces of property:  Specifically, the residence in

5    Norway, the vehicle, and the silver.  A fine -- no need for

6    a fine.

7            That's all I have, Your Honor.

8            THE COURT:  So let me ask on the forfeiture.  Will

9    the residence in Norway be sold?

10           MR. JEHANGIRI:  Yes.  We are making -- we are doing

11   what we can.  The international nature of this really

12   complicates things.  But I'll tell you the folks in my

13   office, the IRS, the FBI, and our partners in Norway are

14   working hard to try to make that happen.

15           THE COURT:  And then the items that are forfeited,

16   I assume that that will be applied to the restitution?

17           MR. JEHANGIRI:  That's my hope.  I mean, my hope is

18   that we are submitting to the Court as soon as possible some

19   sort of document attesting to the value of the assets once

20   we are able to liquidate them.

21           THE COURT:  So my question is:  The items typically

22   would be forfeited to the United States.  Instead of that,

23   should the judgment indicate that they're being forfeited to

24   the United States to then be applied to the restitution?

25           MR. JEHANGIRI:  May I have one moment?

```
 1              THE COURT:  You may.
 2                   (Discussion between government counsel)
 3              MR. JEHANGIRI:  That's fine, Your Honor.
 4              THE COURT:  Thank you.
 5              MR. JEHANGIRI:  Thank you, Your Honor.
 6              DEFENDANT PEACHEY:  Your Honor, may I approach the
 7     clerk?  I've got some documents.
 8              THE COURT:  You may.
 9              The clerk is right over here.
10              DEFENDANT PEACHEY:  This is, for the record, the
11     acceptance of delivery of forfeiture, signed and dated, for
12     the one for Christian Charity Foundation.  Signed and dated.
13     The acceptance of the Redacted Superseding Indictment.
14     There was no date for when it was issued.  It was just
15     dateless, but I dated it 2/14/22, signed and dated by Nathan
16     Peachey.  The Second Superseding Indictment.  There was no
17     date on it given by the Attorney General.  It was
18     open-ended.  So I closed it, accepted the presentment
19     February 14, 2022, signed by Nathan Joel Peachey.  And the
20     Presentence Investigation Report as accepted and dated,
21     Nathan Joel Peachey, February 14, 2022.  Thank you.  Nothing
22     more.
23              THE COURT:  Mr. Peachey, when I read the report
24     about you and the letters on your behalf, you're a man who
25     was one of many children, and you have a twin.  It looked to
```

1  me like you had some health problems when you were younger,

2  and because of that, you became really interested in helping

3  others through natural medicine, and yourself.  You're a

4  dedicated family man and father.  You've got five kids

5  between the ages of 16 and 27.

6         At some point you developed some beliefs.  And as a

7  result of that, didn't file federal income tax returns for

8  many years and started engaging in acts to defraud others of

9  money.  And it started out long before what you were

10  convicted of here.  Sometimes you were a partner in those

11  ventures with your co-defendant here, Mr. Winer.

12         From the evidence that I heard during the trial,

13  and particularly one recording of a conversation between you

14  and Mr. Winer, it was clear to me that the two of you had a

15  long-time, ongoing relationship of scamming money from other

16  people.  You duped many victims.  And during that

17  conversation, you talked about your biggest worry was one of

18  those victims going to law enforcement and basically

19  spilling their guts about what had happened, and that you'd

20  end up getting caught.

21         This scheme that you were charged with here is one

22  of the biggest fraud schemes I've seen:  over $11 million

23  involved.  There was 1.5 million that came back directly

24  into your personal account.  But you were really the money

25  man that moved all of this money around, moved it from the

1    United States over to Norway.  You were involved in

2    purchasing the house in Norway.  You were involved in moving

3    the silver bars from the United States over to Norway.  So

4    you were integrally involved in this entire thing.

5         The people that invested in this scam are people

6    that were convinced of a number of different reasons as to

7    why they should invest.  I think for each investor the

8    scammers were able to figure out what would motivate them,

9    whether it was trying to do religious charitable efforts on

10   behalf of humanity, if it was a guaranteed rate of return to

11   get them to invest.  In any event, you were able to figure

12   out what their motivating factor was and gain their trust

13   and get their money.

14        For almost all of the people that wrote in letters

15   that had been investors, they were investing their

16   retirement money, with the understanding that they would get

17   that money back with a good rate of return.  They almost all

18   talked about how stressful this has been for them, how they

19   have to work more years now because they've lost their

20   retirement money, and how they had full faith in this

21   investment.

22        This is one of the few cases I've had where the

23   jury actually found that the defendant obstructed justice

24   and found that beyond a reasonable doubt.

25        So after considering all of that, and the fact that

1   it involved over $11 million, many, many, many victims, many

2   of them who are suffering financially as a result of this

3   investment, I find that a sentence of 300 months of custody

4   is appropriate under the facts here.

5        If you'd please stand, I'm going to state the

6   sentence, but I won't impose it until counsel has had an

7   opportunity to state any objections.

8        DEFENDANT PEACHEY:  I'm here by special appearance,

9   Your Honor.  I have accepted the Indictment, signed and

10  dated it, returned it.  There is no more controversy.  It

11  has been closed.  I've accepted the sentencing guidelines.

12  Controversy has been closed.

13       Are you making a new offer to me?

14       THE COURT:  I'm not making an offer.  I'm stating

15  the sentence.

16       DEFENDANT PEACHEY:  I will accept your offer.

17  Thank you.

18       THE COURT:  Based on the constitutional and

19  statutory authority vested in this Court, it's the judgment

20  of the Court that the defendant, Nathan Peachey, is hereby

21  committed to the custody of the Bureau of Prisons to be

22  imprisoned for 240 months on Count 1, 2, and 8 through 16,

23  which will run concurrently.

24       Regarding Count 17, you'll be imprisoned for a term

25  of 16 months, which will run consecutively to Counts 1, 2,

1   and 8 through 16.

2            When you're released from prison, you'll be on

3   supervised release for a term of three years on each count.

4   They will all run concurrently.

5            Within 72 hours of being released from the custody

6   of the Bureau of Prisons, you'll need to report in person to

7   the probation office in the district where you're released.

8            While you're under supervision, you need to follow

9   the following mandatory conditions:

10            You must not commit another federal, state, or

11   local crime.

12            You must not unlawfully possess a controlled

13   substance.

14            Mandatory drug testing is suspended because I think

15   you pose a low risk of future substance abuse.

16            You must cooperate in the collection of DNA.

17            You must comply with the standard conditions that

18   have been adopted by this Court and with the following

19   special conditions:

20            You must participate in and complete a cognitive

21   behavioral training program as directed by the probation

22   office.

23            You must provide the probation office with access

24   to any requested financial information.

25            You must apply all monies received from income tax

1  refunds, judgments, and unexpected financial gains to the

2  outstanding court-ordered financial obligation.

3       You must submit your person, residence, place of

4  business, vehicle, possessions, computer, smartphone,

5  tablet, or any other Internet-capable device, including

6  passwords, to a search conducted by a United States

7  probation officer without a warrant when the officer has

8  reasonable suspicion of a violation of a condition of

9  supervision.

10       It's further ordered that you must make

11  restitution, joint and several, with John Rick Winer;

12  Frederick Arias, who is yet to be sentenced; and Lubova

13  Burkute, yet to be sentenced, to the following persons and

14  the following amounts:

15       Paul Brown, 1,500,000; Dennis Brown, 2,925,000;

16  Alexander Knox, 1,300,000; Leigh Fairbank, 1,100,000; Jon

17  Baird, 480,000; Catherine Glauser, 500,000; Dominic Biava,

18  500,000; Shelley Hyde, 300,000; Sandra Glauser, 300,000;

19  William Tennison, 550,000; Marvin Marttila, 532,414; Aaron

20  Beiler, 900,000; Robert and Marsha Moller, 794,159; Jim and

21  Jane Odle, $50,000; Gordon Rudebusch, $10,000; Larry

22  Rudebusch, $15,000; Randy Hudson, $10,000; Ria Woodruff,

23  $10,000; Gerald Dukes, $20,000; Irma Bittner, $9,000; Marlyn

24  Rudebusch, $10,000; Jeff and Gayle Anderson, $20,000, for a

25  total of $11,835,573.

1          Any payment that's not payment in full will be

2     divided proportionately among the persons named.

3          You must notify the United States attorney for this

4     district within 30 days of any change of mailing or

5     residence address that occurs while any portion of the

6     restitution remains unpaid.

7          Payment of the total restitution and other criminal

8     monetary penalties will be due in regular quarterly

9     installments of $25, or 25 percent of the deposits in your

10    inmate trust account, whichever is greater, while you're in

11    custody; or 10 percent of your inmate trust account while

12    serving custody at a residential re-entry center.

13         Any portion of the monetary obligation not paid in

14    full prior to your release will be due in monthly

15    installments of $1,000, such payments to begin 30 days after

16    your release.

17         In light of the restitution owed, I find that you

18    do not have the ability to pay a fine, so the fine and

19    interest are waived.

20         It's further ordered that you must pay to the

21    United States a special assessment of $100 for each count,

22    for a total of $1,200, which is due immediately.

23         You shall forfeit your interest in the following

24    property to the United States, which will then be applied to

25    the restitution:  The residence located at Jongskollen 18,

1    1337 Sandvika, Norway; a vehicle identified as a Mercedes

2    GLC 250 4M, bearing VIN number WDC2539461F049078; and silver

3    coins originally worth approximately $2,757,862.20 in U.S.

4    currency which were seized in June 2019 pursuant to a search

5    warrant executed at the residence located at Jongskollen 18,

6    1337 Sandvika, Norway.

7                Counsel, are either -- are you aware of any reason

8    why the sentence can't be imposed as I stated?

9                MR. JEHANGIRI:  No, Your Honor.

10               THE COURT:  And, Mr. Peachey, are you aware of any

11   reason why the sentence can't be imposed as I stated?

12               DEFENDANT PEACHEY:  Your Honor, I'm here by special

13   appearance.  I've accepted the Indictment.  I've accepted

14   the sentencing report, signed and dated and returned to the

15   Court.  The case has been closed.  Thank you.  Nothing

16   more.

17               THE COURT:  Then the sentence will be imposed as I

18   stated.  And you may be seated.

19               MR. JEHANGIRI:  Your Honor, may I inquire?

20               THE COURT:  You may.

21               MR. JEHANGIRI:  Would the Court enter Jericho

22   Outreach and Christian Charity Foundation as alter egos in

23   its judgment?

24               THE COURT:  I don't believe that that's proper to

25   include in a criminal judgment dealing with Mr. Peachey.

1          Mr. Peachey, if you think I made a mistake, and you

2     want to have another court review what I did, you would need

3     to file a notice of appeal within 14 days from today with

4     the Clerk of Courts Office.

5          DEFENDANT PEACHEY:  I have one right here.  Can I

6     file it now?

7          THE COURT:  As soon as we're finished, you can give

8     it to the clerk.

9          The defendant has been on pretrial release.  What's

10    the government's position?

11         MR. JEHANGIRI:  We'd seek his immediate detention,

12    Your Honor.

13         THE COURT:  Mr. Peachey, do you want to address

14    that?

15         DEFENDANT PEACHEY:  Yes, Your Honor.  I'm here by

16    special appearance, and I've accepted the charges of the

17    United States government.  I've signed and dated and

18    returned that to the clerk.  I've accepted the presentment

19    of the sentencing report, signed and dated and returned it

20    back so it's on the record.  As far as I'm concerned, the

21    case has been closed, the controversy with the United States

22    government.  Thank you.

23         THE COURT:  The defendant has been convicted by a

24    jury, and he has been sentenced.  And in light of that,

25    there is a presumption of detention.  So I'm going to have

1    the U.S. Marshals take him into custody.

2           We'll be adjourned.

3                  (Proceedings concluded at 9:22 a.m.)

4

5
     UNITED STATES DISTRICT COURT)
6    DISTRICT OF SOUTH DAKOTA     : SS   CERTIFICATE OF REPORTER
     SOUTHERN DIVISION            )
7
          I, Carla Dedula, Official United States District Court
8    Reporter, Registered Professional Reporter, Certified
     Realtime Reporter, and Notary Public, hereby certify that
9    the above and foregoing transcript is the true, full, and
     complete transcript of the above-entitled case, consisting
10   of pages 1 - 28.

11

12        I further certify that I am not a relative or employee
     or attorney or counsel of any of the parties hereto, nor a
13   relative or employee of such attorney or counsel, nor do I
     have any interest in the outcome or events of the action.

14
          IN TESTIMONY WHEREOF, I have hereto set my hand this
15   22nd day of March, 2022.

16

17   _____
     CARLA DEDULA RPR, CRR, CRC
18   400 S. Phillips Avenue
     Sioux Falls, SD 57104
19   Phone: (605) 330-6669
     Email:  carla_dedula@sdd.uscourts.gov
20   My Commission Expires:  May 24, 2026

21

22

23

24

25